IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CIVIL ACTION |
| | : | |
| EDWIN O. CRESPO, | : | No. 16-2780 |
| | : | |
| Debtor | : | |
| | : | |
| | : | |
| EDWIN O. CRESPO, | : | Bankruptcy No. 14-11629 |
| | : | |
| Plaintiff, | : | Adversary No. 14-326 |
| | : | |
| v. | : | |
| | : | |
| ABIJAH TAFARI IMMANUEL, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                **March 30, 2017**

Debtor-Appellant Edwin O. Crespo appeals from a May 18, 2016, Bankruptcy Court Order entering judgment against Crespo and in favor of Appellee Abijah Tafari Immanuel in an adversary proceeding Crespo filed seeking to avoid the prepetition upset tax sale of his home to Immanuel as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). The dispositive issue in this appeal is whether Crespo's property was sold to Immanuel for "reasonably equivalent value" within the meaning of the Bankruptcy Code. The Bankruptcy Court held it was, relying on *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994), in which the United States Supreme Court held that when real property is sold at a mortgage foreclosure sale, the price received at the sale constitutes the reasonably equivalent value of the property, "so long as all the requirements of the State's foreclosure law have been complied with." Crespo argues the Bankruptcy Court erred (1) in extending the *BFP* decision to upset tax sales conducted pursuant to the

Pennsylvania Real Estate Tax Sale Law (Tax Sale Law), 72 Pa. Stat. 5860.101 et seq., and (2) in finding the upset tax sale in this case complied with state law.  Because the Court agrees with the Bankruptcy Court on both points, the Bankruptcy Court's Order will be affirmed.

**BACKGROUND**[1]

At some point prior to November 4, 2009, Crespo and his wife, Angelica Crespo, purchased real property located at 715 Kiowa Street, Allentown, Pennsylvania (the Property) for $175,000, which they paid in full at the time of the sale.  The Crespos became delinquent on their property tax payments on the Property in the 2011 tax year.  Crespo thereafter entered into an agreement with the Lehigh County Tax Claim Bureau (the Bureau) to stay the tax sale, which required Crespo to pay the past due taxes in four installment payments. Crespo defaulted on the agreement, however, by missing a payment due January 30, 2013.  On February 12, 2013, the Bureau sent Crespo a delinquency notice by certified mail, but the notice was returned to the Bureau unclaimed.

Deputy Sheriff Jack Anthus, an agent of the Bureau, attempted to personally serve the Crespos with tax sale notices three separate times, once on July 16, 2013, and twice on July 17, 2013.  All three attempts were unsuccessful.[2]

On September 10, 2013, the Bureau filed a petition to waive the requirement that notice of the upset tax sale be personally served on the Crespos, as owner occupants of the Property, in

---

[1] Prior to trial in the Bankruptcy Court, the parties entered into a detailed Stipulation of Facts (Stipulation).  The Bankruptcy Court decided the case based on the facts in the Stipulation and the exhibits thereto.  The following facts are drawn from those same sources.

[2] Crespo typically remains at home during the day to care for his wife's disabled son; he does not recall leaving his home on July 16 or 17, 2013.

the Lehigh County Court of Common Pleas.  The Bureau did not serve the petition on the Crespos.  The Common Pleas Court granted the petition later the same day.

The following day, on September 11, 2013, the Bureau exposed the Property to an upset tax sale.  Immanuel was the only party to bid on the Property at the sale, and he purchased the Property with a bid of $27,000.  Crespo contends that at the time of the sale, the Property had a fair market value of $175,000.

On October 31, 2013, the Crespos filed a petition to set aside the tax sale, challenging, *inter alia*, the Bureau's failure to provide them with "personal notice" of the sale, failure to post notice of the sale on the Property, and failure to provide them with notice of the petition to waive personal service.  *See* R.11 at 8.  The Common Pleas Court held an evidentiary hearing on the petition on January 24, 2014.[3]  During the hearing, the Crespos' counsel stipulated that his clients had received notice of the sale by certified mail and that notice of the sale had been published as required by statute.  R.11 at 41, 82.  Ms. Crespo also acknowledged having received certified mail notice of the upcoming tax sale, stating the notice had prompted her to call the Bureau seeking a new payment plan, to which the Bureau would not agree.  *Id.* at 71.  Deputy Sheriff Anthus also testified at the hearing, stating he posted the tax sale notice on the front of the Property when he attempted to personally serve the Crespos in July 2013.  *Id.* at 48.  The Crespos, however, maintain they did not personally observe any posting on July 16, 2013, or at any time thereafter.

---

[3] Although the transcript of the evidentiary hearing lists the hearing date as May 14, 2015, this date is obviously incorrect.  The Common Pleas Court's Order denying the petition relies on testimony given at the hearing; hence, the hearing had to have occurred before the Order was issued on February 4, 2014.  *See* R.11 at 87.  And the complaint and answer in the underlying adversary proceeding indicate the hearing was held on January 24, 2014.  *See* R.7 ¶ 40; R.8 ¶ 40.

Following the hearing, the Common Pleas Court denied the petition by Order dated February 4, 2014. *Id.* at 87. The Court rejected the Crespos' argument that the Bureau had failed to comply with the Tax Sale Law's posting requirement, *see* 72 Pa. Stat. § 5860.602(e)(3), crediting Deputy Sheriff Anthus's testimony that he had posted notice of the sale on the Property.[4] As for the Crespos' arguments that the Bureau failed to personally serve them with notice of the sale, *see id.* § 5860.601(a)(3), the Court found personal service was not required because the Court had waived the requirement for good cause shown. Finally, the Court rejected the Crespos' argument that the Bureau's petition to waive personal service should be stricken because of the Bureau's failure to serve the petition on the Crespos, noting this argument was inconsistent with the purpose of the waiver provision, which was aimed at preventing parties from hiding from actions against them, and observing that the Crespos had actual notice of the sale in any event.

A month later, on March 4, 2014, a few days before the time to appeal the Common Pleas Court's February 4, 2014, ruling was due to expire, Crespo filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania. On July 20, 2014, Crespo commenced the underlying adversary proceeding in the Bankruptcy Court against Immanuel, the tax sale purchaser, seeking to avoid the tax sale as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B) on the basis that the Property had been sold for less than "reasonably equivalent value."[5] The case proceeded to trial, at which the parties submitted a

---

[4] The Court found § 5860.602's other notice requirements—notice by publication and certified mail—were satisfied based on counsel's stipulation during the evidentiary hearing.

[5] The adversary complaint also named the Lehigh County Tax Claim Bureau as a Defendant, but the parties stipulated that the Bureau would not be required to answer and agreed that until a final decision was rendered in the case, the Bureau would "continue to hold the monies paid by Immanuel as a stakeholder only," would "not apply the monies to Immanuel's purchase of the

stipulation of facts with accompanying exhibits.  The parties thereafter submitted post-trial briefs, and on May 18, 2016, the Bankruptcy Court issued an opinion finding the tax sale was not avoidable.  The Bankruptcy Court entered judgment in favor of Immanuel and sua sponte granted relief from the automatic stay to enable the parties to participate in an appeal of the Common Pleas Court's Order denying the petition to set aside the tax sale if they wished.  On May 27, 2016, Crespo filed a notice of appeal from the Bankruptcy Court's Order entering judgment in favor of Immanuel in the adversary proceeding.

Three weeks later, on June 17, 2016, the Crespos also filed a notice of appeal in state court, seeking review of the Common Pleas Court's Order denying their petition to set aside the upset tax sale.  On January 5, 2017, the Commonwealth Court issued an opinion affirming the Common Pleas Court's Order.  *Crespo v. Lehigh Cty. Tax Claim Bureau*, No. 1169 C.D. 2016, 2017 WL 56120 (Pa. Commw. Ct. Jan. 5, 2017).  Based on a search of the Pennsylvania Unified Judicial System's web portal, the Crespos do not appear to have sought further review of the matter.

**DISCUSSION**

The Bankruptcy Court had jurisdiction over the adversary proceeding under 28 U.S.C. §§ 157 and 1334.[6]  This Court has jurisdiction to review the Bankruptcy Court's final order in

---

Property," and would "take no action to convey title to the Property to Immanuel" pending further court order.  R.9 ¶ 10.

[6] Before the Bankruptcy Court, Immanuel argued the Bankruptcy Court lacked jurisdiction over Crespo's adversary complaint under the *Rooker-Feldman* doctrine, which precludes federal courts from exercising subject matter jurisdiction over "suits that are essentially appeals from state-court judgments."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).  Immanuel raises a variation of that argument here, suggesting this case "would warrant serious scrutiny" under the *Rooker-Feldman* doctrine.  *See* Appellee's Br. 12. This Court disagrees.  The *Rooker-Feldman* doctrine applies when "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3)

the underlying adversary proceeding pursuant to 28 U.S.C. § 158(a)(1).  A district court reviews a "bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof."  *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (citation omitted).

Crespo seeks to set aside the upset tax sale of the Property under 11 U.S.C. § 548(a)(1)(B), which authorizes a bankruptcy trustee[7] to avoid "any transfer . . . of an interest of the debtor in property" made within two years before the debtor filed a bankruptcy petition if the debtor voluntarily or involuntarily "received less than a reasonably equivalent value for such transfer" and "was insolvent on the date that such transfer was made . . . , or became insolvent as

---

those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state court judgments."  *Id.* at 166 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (alterations in original).  As the Bankruptcy Court recognized, in the adversary proceeding, Crespo complains of injury caused by the sale of his Property for less than reasonably equivalent value at the upset tax sale. Because this injury existed prior to the Crespos' initiation of a proceeding to set aside the tax sale, it could not have been caused by the Common Pleas Court's subsequent Order denying relief.  Moreover, whether the upset tax sale of the Property can be avoided as a fraudulent transfer under the Bankruptcy Code is a question of federal bankruptcy law that was not (and could not have been) raised in state court.  Although directed at the same transaction as the state court judgment, Crespo's adversary complaint is thus not an invitation for the Bankruptcy Court to review the state court judgment but an effort to invalidate the sale under federal law.  *See, e.g.*, *See Smith v. SIPI, LLC*, 526 B.R. 737, 742 (N.D. Ill. 2014) (finding the *Rooker-Feldman* doctrine inapplicable to an adversary proceeding in which plaintiffs sought to use the Bankruptcy Code's fraudulent transfer provision to invalidate the transfer of their property in state-court tax foreclosure proceedings, as the suit asked the Bankruptcy Court "to exercise original jurisdiction, not sit in appellate review of the state court's judgment on a purely state-law matter"), *rev'd on other grounds*, 811 F.3d 228 (7th Cir. 2016); *In re Merritt*, 529 B.R. 845, 859 n.21 (Bankr. E.D. Pa. 2015) ("There is considerable authority holding that the *Rooker-Feldman* doctrine is inapplicable when a federal statute specifically authorizes a lower federal court to set aside a state court judgment." (collecting cases)), *aff'd*, 2016 WL 930696 (E.D. Pa. Mar. 10, 2016).

[7] By its terms, § 548(a)(1) empowers "[t]he trustee" to avoid fraudulent transfers; however, a debtor may also set aside a fraudulent transfer in some instances.  *See Smith v. SIPI, LLC (In re Smith)*, 811 F.3d 228, 236 (7th Cir. 2016) (holding "11 U.S.C. § 522(h) allows a debtor to also set aside a fraudulent transfer if the trustee has not attempted to do so").  Notably, Immanuel does not contend Crespo lacks standing to pursue this action.

a result of such transfer."  In the present case, whether the tax sale can be avoided turns on whether the Property was sold for "reasonably equivalent value" within the meaning of the statute.

The Supreme Court considered the meaning of the term "reasonably equivalent value" in the context of property sold at a mortgage foreclosure sale in *BFP v. Resolution Trust Corp.*, a case that involved a debtor's effort to set aside as a fraudulent transfer a foreclosure sale in which property allegedly worth more than $725,000 was sold for $433,000.  The Court declined to interpret the phrase "'reasonably equivalent value' in § 548(a)(2) to mean, in its application to mortgage foreclosure sales, either 'fair market value' or 'fair foreclosure price,'" instead holding "a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure laws have been complied with."  *BFP*, 511 U.S. at 545.

As to fair market value, the Court found the concept inapplicable in the context of a forced sale such as a foreclosure sale.  Fair market value, the Court explained, is the price the property "might be expected to bring if offered for sale in a fair market"—i.e., one characterized by negotiation, mutual agreement, and ample time to find a purchaser.  *See id.* at 538 (citation omitted).  Such market conditions, by definition, do not exist for foreclosed properties, which, because they must be sold "within the time and manner strictures of state-prescribed foreclosure," are "simply *worth less.*"  *Id.* at 538-39.  Foreclosure thus "has the effect of completely redefining the market in which the property is offered for sale" based on the applicable state rules governing foreclosure sales.  *See id.* at 548.

The Court also rejected the notion that reasonably equivalent value could be defined in terms of a reasonable foreclosure price, finding this interpretation would require courts to make

7

"policy determinations that the Bankruptcy Code gives [them] no apparent authority to make."
*Id.* at 540.  In reaching this conclusion, the Court described the conflict such an interpretation would create with pre-existing foreclosure law.  State foreclosure laws, the Court explained,

> typically require notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures.  Many States require that the auction be conducted by a government official, and some forbid the property to be sold for less than a specified fraction of a mandatory presale fair-market-value appraisal.

*Id.* at 542.  So long as the state's procedures are followed, "mere inadequacy of the foreclosure sale price is no basis for setting aside the sale, though it may be set aside (*under state foreclosure law*, rather than fraudulent transfer law) if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'"  *Id.* (citation omitted).  Interpreting reasonably equivalent value to require a foreclosure sale "to yield a certain minimum price beyond what state foreclosure law requires" would have the effect of displacing state foreclosure law and would impinge on the state's interest in the security of title to real estate, placing "[t]he title of every piece of realty purchased at foreclosure . . . under a federally created cloud."  *Id.* at 543-45.  Finding no basis to interpret the Bankruptcy Code to displace state law in this manner, the Court instead held the reasonably equivalent value of foreclosed property is the price generated by operation of the state foreclosure process, i.e., the price received in a foreclosure sale conducted in accordance with state law.

The Supreme Court emphasized the *BFP* decision "cover[ed] only mortgage foreclosures of real estate," noting "[t]he considerations bearing upon other foreclosures and forced sales," including tax sales, might be different.  *Id.* at 537 n.3.  Nevertheless, federal courts have since extended the reasoning of the case to tax sales where the applicable state tax sale law provides procedural protections similar to those provided by the state's foreclosure laws, including that

the sale be conducted publicly with competitive bidding.  *See, e.g.*, *In re Tracht Gut*, 836 F.3d 1146, 1155 (9th Cir. 2016) (extending *BFP* to tax sales conducted in accordance with California law "[b]ecause the policy of deferring to state law on matters of real estate applies as much to tax sales as to mortgage foreclosures, and because tax sales in California contain the procedural safeguards that apply to mortgage foreclosures"); *Kojima v. Grandote Int'l Ltd. Liab. Co. (In re Grandote Country Club Co.)*, 252 F.3d 1146, 1152 (10th Cir. 2001) (noting "the decisive factor in determining whether a transfer pursuant to a tax sale constitutes 'reasonably equivalent value' is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure," and holding *BFP* applies to tax sales conducted under Colorado law, which provides for competitive bidding).  Where the state tax sale law in question does not provide for competitive bidding and the sale of the property to the highest bidder, in contrast, courts have declined to treat the tax sale price as conclusive evidence of the reasonably equivalent value of the property.  *See, e.g.*, *Smith*, 811 F.3d at 237-38 (declining to extend *BFP* to tax sales conducted pursuant to Illinois law, under which bidders "vie to purchase the tax lien, not the property itself," by bidding down the interest rate the buyer is willing to accept from the taxpayer to redeem the property, with the property going to the *lowest* bidder).[8]

---

[8] The court in *Smith* distinguished the so-called "interest rate method" of collecting delinquent property taxes applicable in Illinois with the "overbid method" at issue in *Tracht Gut* and *Grandote*, under which "the bidding price begins at the total amount of taxes and interest due, and potential buyers then offer higher bids up to the total price they are willing to pay in return for (eventual) fee simple title." *Smith*, 811 F.3d at 237.  The court observed that whereas under the overbid method, "the fair market value acts as a cap for the auction, testing at least in theory who is willing to pay the most for title to the property," under the interest rate method, "zero percent acts as a floor for the bidding, to determine who is willing to accept the least in penalty interest," with the result that "[b]idding using the interest rate method . . . bears no relationship to the value of the property itself."  *Id.* at 238.

Within the Third Circuit, several bankruptcy courts have held the reasoning of *BFP* extends to upset tax sales conducted in accordance with the Pennsylvania Tax Sale Law based on the similarities between the procedural protections applicable to upset tax sales and those applicable to mortgage foreclosure sales in Pennsylvania. *See Golden v. Mercer Cty. Tax Claim Bureau (In re Golden)*, 190 B.R. 52, 58 (W.D. Pa. 1995); *Lord v. Neumann (In re Lord)*, 179 B.R. 429, 436 (Bankr. E.D. Pa. 1995); *cf. Hemstreet v. Brostmeyer (In re Hemstreet)*, 258 B.R. 134, 138-39 (Bankr. W.D. Pa. 2001) (relying on the bankruptcy court's analysis in *Golden* in holding "the price received at a properly conducted, noncollusive tax sale auction constitutes reasonably equivalent value" for purposes of the Pennsylvania Uniform Fraudulent Transfer Act).  As the court explained in *Lord*,

> the protections, rights and remedies afforded a delinquent taxpayer under the [Pennsylvania Tax Sale Law] are no less than those afforded a mortgagor under Pennsylvania's mortgage foreclosure law.  Indeed taxpayers receive more and earlier notices prior to the tax sale than mortgagors, and a longer guaranteed period of time within which to cure the default.  Each statutory scheme contemplates competitive bidding pursuant to prescribed bidding procedures which are conducted by a government official and neither provides for a period of redemption once the sale is held.  The [Tax Sale Law] affords the taxpayer the three key protections offered by foreclosure laws:  notice, ample opportunity to cure, and strict adherence to statutory requirements.

179 B.R. at 435-36 (footnote omitted).  Noting its agreement with the reasoning of these cases, the Bankruptcy Court in this case likewise held *BFP* extends to upset tax sales under the Pennsylvania Tax Sale Law, such that "the price obtained at a tax upset sale conducted in compliance with the [Tax Sale Law] constitutes reasonably equivalent value for purposes of § 548(a)(1)(B)(i)."  R.4 at 13.

Crespo argues the Bankruptcy Court erred in extending *BFP* to upset tax sales under the Tax Sale Law because, unlike mortgage foreclosure sales or judicial tax sales under the Tax Sale

Law,[9] upset tax sales "cannot, in practice, generate competitive bidding." Appellant's Br. 8. In contrast to foreclosure sales and judicial tax sales, which divest the liens on the property purchased to varying degrees,[10] in an upset tax sale, the purchaser acquires the property subject to existing liens. *See* 72 Pa. Stat. Ann. § 5860.609 (providing an upset tax sale "shall convey title to the property under and subject to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien not included in the upset price with which said property may have or shall become charged or for which it may become liable"). According to Crespo, while the advertisement for an upset tax sale notifies potential bidders that the property will be sold subject to existing liens, no information is provided as to whether a property is encumbered by liens and, if so, in what amount. Crespo argues this lack of information about the liens encumbering a property and the quality of title a purchaser will acquire prevents competitive bidding at upset tax sales and renders *BFP* inapplicable to such sales. The Court disagrees.

Crespo does not dispute that the Tax Sale Law contemplates competitive bidding. As numerous courts have recognized, in Pennsylvania, an upset tax sale is conducted as an auction "at which bidding occurs, and at which the properties are struck down to the highest bidder." *In re Upset Sale of Sept. 8, 1980*, 495 A.2d 221, 222 (Pa. Commw. Ct. 1985) (citation omitted); *see*

---

[9] If an upset tax sale is held, but the upset price is not bid for a property, the tax claim bureau may petition the court of common pleas to sell the property at a judicial tax sale. *See* 72 Pa. Stat. § 5860.610. "A judicial sale discharges all mortgages and the purchaser takes title 'free and clear of all tax and municipal claims, mortgages, liens, charges and estates of whatsoever kind, except ground rents, separately taxed.'" *First Fed. Sav. & Loan Ass'n of Lancaster v. Swift*, 321 A.2d 895, 898 (Pa. 1974) (quoting 72 Pa. Stat. Ann. § 5860.612).

[10] A foreclosure sale "divests all junior liens on th[e] property" sold. *Boyer v. Walker*, 714 A.2d 458, 462 (Pa. Super. Ct. 1998). A judicial tax sale, as noted, divests all liens on the property. *See* n.9 *supra*.

*also Golden*, 190 B.R. at 57.  Upset tax sales are advertised to the public—both by posting of the property to be sold and by publication—so as to "increase[] the number of bidders for the property" and to ensure "that the property is sold for the highest amount possible."  *In re Upset Price Tax Sale of Sept. 10, 1990*, 606 A.2d 1255, 1258 (Pa. Commw. Ct. 1992); *see also Golden*, 190 B.R. at 57 (noting the advertising of an upset tax sale "attracts bidders to a public sale at which the highest bid is accepted").  And no property may be sold "unless a bid equal to the upset price is made."[11]  72 Pa. Stat. § 5860.605.

Crespo's assertion that the lack of notice about liens encumbering a property listed for sale at an upset tax sale prevents competitive bidding is factually unsupported.  Although the tax claim bureau may not provide information about such liens, the published notice of the sale is required to include a description of the properties to be sold and the name of their owners.  *Id.* § 5860.602(a).  There is nothing to prevent a potential bidder from investigating the status of title to a property before bidding, as Immanuel apparently did in this case.  *See* Appellee's Br. 8-9.  And while the tax sale in this case may not have generated competitive bidding for Crespo's Property, case law confirms that upset tax sales are capable of generating competitive bidding.

---

[11] The upset price is

> the sum of (a) the tax liens of the Commonwealth, (b) the amount of the claim absolute and interest thereon on which the sale is being held, (c) the amount of any other tax claim or tax judgment due on such property and interest on the judgment to the date of sale, (d) the amount of all accrued taxes including taxes levied for the current year, whether or not returned, a record of which shall be furnished to the bureau by tax collectors, receivers of taxes and taxing districts, (e) the amount of the municipal claims against the property, and (f) the record costs and costs of sale, including pro rata costs of the publication of notice and costs of mail and posted notices in connection with the return of the claim and mail and posted notices of sale.

72 Pa. Stat. § 5860.605.

*See, e.g.*, *In re Walker*, No. 03-33446F, 2005 WL 6522758, at *2 (E.D. Pa. May 31, 2005) (property with an upset price of $43,674 was sold, after competitive bidding, for $113,000); *Golden*, 190 B.R. at 56 (property with an upset price of $3,179.96 was sold, after "a series of competitive bids," for a "final high bid of $7,900").

Pennsylvania law "presumes that the price received at a duly advertised public [upset tax] sale is the highest and best obtainable," *Roeting v. Lancaster Cty.*, 401 A.2d 580, 581 (Pa. Commw. Ct. 1979), and precludes courts from setting aside an upset tax sale "solely on the ground of the inadequacy of price," *Povlow v. Brown*, 315 A.2d 375, 377 (Pa. Commw. Ct. 1974). Given the similarities between the procedural protections applicable to upset tax sales and foreclosure sales in Pennsylvania, the Bankruptcy Court correctly held *BFP* extends to upset tax sales under the Pennsylvania Tax Sale Law.[12]

---

[12] *Ryker v. Current (In re Ryker)*, 301 B.R. 156 (D.N.J. 2003), the case on which Crespo relies most heavily, is inapposite to this issue. *Ryker* involved an appeal from a bankruptcy court's summary judgment ruling in favor of a debtor on his claim to set aside the *foreclosure* sale of his home as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). Notably, the case did not involve a tax sale (or Pennsylvania law), and the court thus had no occasion to consider whether *BFP* extends to upset tax sales under the Pennsylvania Tax Sale Law.

The relevant issue in *Ryker* was instead whether the foreclosure sale had been conducted in accordance with New Jersey law, such that the sale price could be deemed to be the reasonably equivalent value of the debtor's property. (The court addressed this issue for efficiency's sake, after concluding the case should be remanded to permit the bankruptcy court to determine whether the debtor had standing to bring the adversary action.) The district court concluded the sale did not comply with New Jersey law because the original sale date was adjourned and never re-advertised. While acknowledging that re-advertising was not generally required for adjourned foreclosure sales, the court held re-advertising was required in the particular case before it because subsequent events had rendered the original sale notice inaccurate in a way that chilled bidding at the foreclosure sale. Although the original sale notice stated the amount necessary to satisfy the foreclosure judgment was approximately $220,000, the debtor thereafter paid approximately $170,000 toward the judgment pursuant to a forbearance agreement, such that, by the time of the rescheduled sale, the amount necessary to satisfy the foreclosure judgment was only $50,000. Because the sale was not re-advertised, only the mortgagees knew of the dramatic reduction of the debt on the property, and they were thus able to purchase the property for only $100 over the amount of the judgment. The district court concluded that, in these circumstances, New Jersey law would require the property to be "re-

Crespo alternatively argues that, even if *BFP* extends to upset tax sales, Immanuel's bid cannot be deemed to be the reasonably equivalent value of the Property because the tax sale in this case did not comply with the Tax Sale Law's requirements.  Specifically, Crespo asserts the Bureau failed to personally serve him and his wife with written notice of the sale at least ten days prior to the sale, as required by 72 Pa. Stat. § 5860.601(a)(3).[13]  The Bankruptcy Court rejected this argument, holding it was bound by the Common Pleas Court's finding that the sale was conducted in accordance with the Tax Sale Law based on the doctrine of collateral estoppel. This Court agrees collateral estoppel applies here.

The preclusive effect to be accorded a judgment "is determined by the preclusion law of the issuing court"—here, a Pennsylvania state court.  *See Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999).  Under Pennsylvania law, collateral estoppel bars relitigation of an issue when four conditions are met:

> (1) the issue decided in the prior case must be identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

---

advertised and posted in a manner designed to insure the opportunity for competitive bidding." *Id.* at 169.

As discussed in greater detail below, Crespo has not shown the tax sale violated any requirement under the Pennsylvania Tax Sale Law.  And while Crespo maintains the lack of lien information in an upset tax sale notice may chill the bidding process, he does not contend upset tax sale notices are inaccurate in any way, unlike the notice at issue in *Ryker*.  To the contrary, Crespo concedes the advertisement for a tax upset sale notifies potential bidders "that the sales to a successful bidder on property would be subject to existing liens."  Appellant's Br. 7.

[13] Although Crespo cites § 5860.602 as the provision violated, his brief makes clear he is challenging the lack of personal service, a requirement set forth in § 5860.601.  *See* Appellant's Br. 8-9.

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (quoting *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998)) (internal quotation marks and alterations omitted).

As the Bankruptcy Court recognized, all four requirements are satisfied here. With respect to the first requirement, the issue before the Common Pleas Court on the Crespos' petition to set aside the tax sale was whether the requirements of the Tax Sale Law were met, including the requirement of notice by personal service under § 5860.601(a)(3), the same issue Crespo presses here. *See* R.11 at 8, ¶ 5. The third and fourth collateral estoppel requirements are also satisfied, as Crespo was a party to the proceedings in the Court of Common Pleas and had a full and fair opportunity to litigate the notice issue before that Court.

As to the second requirement—a final judgment on the merits in the prior action—the Common Pleas Court issued a final Order denying the petition to set aside the tax sale on February 4, 2014, finding the requirements of § 5860.601(a)(3) were satisfied because the Court granted the Bureau a waiver of the personal service requirement for good cause shown. *See id.* at 87. Although the appeal period for the February 4, 2014, Order had not yet run when Crespo filed his bankruptcy petition, and was therefore stayed upon the filing of the petition, the Order was nevertheless final for collateral estoppel purposes. *See Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996) ("A judgment is deemed final for purposes of . . . collateral estoppel unless or until it is reversed on appeal."); *cf. In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997) (holding a state court default judgment against a debtor as to liability was final for collateral estoppel purposes, even though a trial on damages had not yet been held, where there was nothing in the record to suggest the state court had any intention of revisiting the issue of liability and where the debtor prevented the damages trial from going forward by filing for bankruptcy the day the trial was to

15

begin).  Even if the Order should not have been deemed final at the time of the Bankruptcy Court's decision, the Order has since been appealed and affirmed by the Commonwealth Court, which held "the trial court did not abuse its discretion in finding that there was good cause to waive personal service."  *Crespo*, 2017 WL 56120, at *3.  Because the requirements for collateral estoppel are satisfied, Crespo is precluded from relitigating the issue of notice under § 5860.601(a)(3) in this action.[14]

For the reasons set forth above, the Court agrees with the Bankruptcy Court that (1) the reasoning of the *BFP* decision applies to upset tax sales in Pennsylvania, and (2) the tax sale in this case complied with state law requirements.  As a result, the price for which the Property was sold at the upset tax sale is deemed to be the "reasonably equivalent value" of the Property for purposes of 11 U.S.C. § 548(a)(1)(B)(i).  The Bankruptcy Court's judgment that the upset tax sale of the Property to Immanuel is not avoidable under § 548(a)(1)(B) will therefore be affirmed.

An appropriate order follows.

---

[14] Even if collateral estoppel were inapplicable, this Court has no reason to revisit the Common Pleas Court's finding, especially in light of the Commonwealth Court's recent affirmance of the Common Pleas Court's ruling.  Section 5860.601(a)(3) requires the tax claim bureau to give an owner occupant of property to be sold at an upset tax sale "written notice of such sale at least ten (10) days prior to the date of actual sale by personal service."  But if personal notice "cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown."  72 Pa. Stat. § 5860.601(a)(3).  Here, Deputy Sheriff Anthus attempted to personally serve the Crespos on three occasions over the course of two different days, but was unsuccessful.  Because Anthus was unable to personally serve the Crespos, the Bureau filed a petition with the Lehigh County Court of Common Pleas to waive the requirement of personal notice for good cause shown, and the Common Pleas Court granted the petition.  The Commonwealth Court found the Common Pleas Court did not abuse its discretion in finding that there was good cause to waive personal service, and Crespo offers no reason why this Court should hold otherwise and cites no Pennsylvania case law holding to the contrary.

BY THE COURT:


    /s/ Juan R. Sánchez
Juan R. Sánchez, J.